UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>  v.<br><br>RAJA MICHAEL MAWAD and RNS HOLDINGS LP,<br><br>                Defendants. | CASE NO. 2:21-cv-00220-TL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff United States of America's unopposed Motion for Summary Judgment against Defendant Raja Michael Mawad (Dkt. No. 13).[1] Having considered the relevant record and the governing law, the Court GRANTS the motion.

---

[1] The United States filed a Motion for Default against Defendant RNS Holdings LP. Dkt. No. 20. Default was entered against Defendant RNS Holdings LP on April 8, 2022. Dkt. No. 21.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

Plaintiff initiated this proceeding to recover the restitution and civil monetary penalty that Defendants Raja Michael Mawad and RNS Holdings LP agreed to pay to the U.S. Commodity Futures Trading Commission (CFTC). Dkt. No. 13 at 1–2. Defendant Mawad is the president, founder, principal, and ninety-nine percent owner of Defendant RNS Holdings. Dkt. No. 1 at 2. Defendant RNS Holdings is a no-longer-functioning Texas limited partnership. *Id*.

Between 2009 and 2015, Defendant RNS Holdings operated a commodity pool, RNS Capital LP Fund, and it was registered with CFTC as a commodity pool operator from 2013 to 2015. Dkt. No. 13 at 3. The fund had at most 22 participants, who were friends and family of Defendant Mawad. Dkt. No. 1-1 at 2. At its height in 2011, the fund reached a value of approximately $32.5 million but fell to approximately $18,000 in value by January 2015 (primarily due to trading losses), and effectively ceased operations in early 2015. *Id.*; Dkt. No. 1 at 2.

Beginning in 2009 through 2015, Defendants made $189,032.72 in unauthorized withdrawals from the commodity pool for personal expenses, travel, meals, and expenses of another commodity pool. Dkt. No. 1-1 at 2–3. Defendant RNS Holdings also employed a chief financial officer whose salary and payroll taxes were paid out of the Fund even though the Fund's Private Placement Memorandum expressly stated that the Fund would not reimburse RNS for salaries. *Id.* Defendant RNS Holdings also failed to distribute required annual reports to the fund participants and submit them to the National Futures Association for 2013 and 2014. *Id.* at 4.

Defendant Mawad signed a written offer of settlement in 2016, in which he and Defendant RNS Holdings agreed to entry of a consent order that found they had violated the Commodity Exchange Act and pertinent regulations, and they agreed to pay remedial sanctions.

Dkt. No. 15-1 (offer of settlement); Dkt. No. 13 at 4; Dkt. No. 1-1 at 5–6. The consent order was entered on September 20, 2016. Dkt. No. 13 at 4; *see also* Dkt. No. 1-1 (consent order). Defendant Mawad also submitted a financial statement indicating his ability to pay the remedial sanctions. Dkt. No. 13 at 5. Defendants agreed that the CFTC could enforce the terms of the consent order, waived judicial review, and agreed not to publicly contest the findings or conclusions of the consent order. *Id*.

The terms of the consent order made Defendants jointly and severally liable for restitution of $109,449.94[2] and a civil monetary penalty of $200,000.00, plus interest. *Id*. at 6–7. Pre-judgment interest has accrued at 0.61 percent per year per the consent order (since September 20, 2016). *See* Dkt. No. 1-1 at 6, 9; Dkt. No. 13 at 6.[3] Defendant Mawad admits that as of February 17, 2021, he and Defendant RNS Holdings owed a total of $317,925.98 comprised of: (1) $200,000.00 in principal civil monetary penalty plus $5,503.28 interest thereon, and (2) $109,449.94 in principal restitution plus $2,972.76 interest thereon. *Id*. at 7; Dkt. No. 7 at 2. By February 8, 2022, due to accrual of more pre-judgment interest, the total civil monetary penalty and restitution owed by Defendants had grown to $319,812.92. Dkt. No. 14.

The Department of Justice filed this action for judicially-enforced collection of the still-unpaid debt that Defendants admit they owe to CFTC. Dkt. No. 1 at 7. In the answer to the complaint in this case, Defendant Mawad admitted most of these allegations, including that he owes the above-described debt. *Id*.; *see also* Dkt. No. 7 at 1–2 (agreeing to nearly all of the

---

[2] The restitution amount was originally $189,032.72, but this was offset by the $79,582.78 that the National Futures Association had distributed to investors harmed by Defendants' violations of the Commodity Exchange Act in connection with a National Futures Association case (No. 15-BCC-021). *See* Dkt. No. 1-1 at 6; Dkt. No.1 at 6.

[3] Though the consent order refers to the post-consent-order interest award as post-judgment interest, vis-à-vis this Court's judgments, the amount stipulated to in the consent order is considered pre-judgment interest. *Compare* Dkt. No. 1-1 at 6 (referring to post-judgment interest accruing from the date of the consent order) *with* Dkt. No. 13-1 (requesting pre-judgment interest based on the statutory rate applicable when the consent order was entered).

paragraphs of the complaint).[4] In the answer, Defendant Mawad indicated that his legal violations were the result of mistaken advice from a company he had contracted with, and that he "physically can not [*sic*]" pay because he "liquidated everything for the original restitution that was compounded by trading losses." *Id*. at 1. He also disagreed that he had waived his rights to any post-hearing procedures, due to confusion and lack of legal representation. *Id*. at 2.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. A genuine triable issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Additionally, "all justifiable inferences" must be drawn in the non-movant's favor, *id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), "only in the sense that, where the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied*." Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or

---

[4] In the Answer, Defendant Mawad disputed receiving the demand letters for payment of restitution because he was no longer at the address on file. Dkt. No. 7 at 1. But pursuant to the consent order, Mr. Mawad had a duty to provide any change of mailing address to the Commission. Dkt. 1-1 at 9.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [it] must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577–78 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by Court); *see also Liberty Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence"); *accord Oracle Corp. Secs. Litig.*, 672 F.3d 376, 387 (9th Cir. 2010). The non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798, 805 (9th Cir. 2010), *cert. denied*, 563 U.S. 1008 (affirming grant of summary judgment against appellant who had "failed to adduce any evidence or authority to support her claim").

### III.   DISCUSSION

The United States has moved for summary judgment against Defendant Mawad only. Dkt. No. 13 at 1. Defendant Mawad has neither filed an opposition to Plaintiff's motion nor presented any additional facts or argument for the Court's consideration. Lack of opposition to a summary judgment motion is not itself grounds for automatic grant of the motion, but "an unopposed motion for summary judgment may be granted if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine dispute of material fact." *E.g., Reed v. Corizon, LLC*, 859 F. App'x 778, 779 (9th Cir. 2021) (citations omitted)

(explaining that failure to file a timely opposition was an inappropriate ground for granting summary judgment while affirming grant of summary judgment because there was no genuine dispute of material fact on the face of the moving papers).

Here, Plaintiff has supported each statement of material fact via evidence from the record, and no genuine triable issue of material fact has been raised in the moving papers. *See generally* Dkt. No. 13. Not only has Plaintiff provided the consent order detailing the findings and conclusions they reiterated in their motion—findings and conclusions which Defendants had agreed to not contest, *see generally* Dkt. No. 15-1—Defendant Mawad's answer admits many of the key allegations (including that Defendants consented to CFTC's entry of the consent order, and that they consented to CFTC's use of that consent order in a proceeding to enforce the order's terms). *See* Dkt. No. 7 at 1 (admitting paragraphs 18 and 19 of the complaint); *see also* Dkt. No. 1 at 5 (complaint, paragraphs 18 and 19). Significantly, Defendant Mawad does not dispute that he had withdrawn unauthorized expenses from the commodity pool, instead providing an explanation for the wrongdoing. *See* Dkt. No. 7 at 1 (acknowledging withdrawal of the expenses alleged in paragraph 16 of complaint while disagreeing with how the withdrawal was characterized); *see also* Dkt. No. 1 at 4 (complaint, paragraph 16).

## IV.   CONCLUSION

For the above reasons, the Court GRANTS Plaintiff United States of America's motion for summary judgment. The United States is entitled to a money judgment against Defendant Mawad in the amount of: (1) $200,000.00 in principal civil monetary penalty, plus pre-judgment interest at an annual rate of 0.61 percent from September 20, 2016, until the date of judgment; and (2) $109,449.94 in principal restitution, plus pre-judgment interest at an annual rate of 0.61 percent from September 20, 2016, until the date of judgment. Defendant Mawad's liability for

the judgment in this case shall be joint and several with Defendant RNS Holdings LP, to the extent that a judgment is also entered against that defendant.

Dated this 22nd day of August 2022.

Tana Lin
United States District Judge